UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CHRISTENSEN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No.  2:12-cv-2698 AC<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XIV of the Social Security Act.  The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI in January 27, 2010 alleging disability beginning on July 21, 2009.  Administrative Record ("AR") 50, 149-49.  Plaintiff's application was denied initially and again upon reconsideration.  AR 72-76, 78-82.  On June 21, 2011, a hearing was held before administrative law judge ("ALJ") David M. Blume.  AR 35-54.  Plaintiff appeared with attorney representation at the hearing, at which he and a vocational expert testified.  See id.  In a

1

decision dated July 1, 2011, the ALJ found that plaintiff was not disabled. AR 19-34. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since January 27, 2010, the application date.
>
> 2. The claimant has the following severe impairments: aortic insufficiency and depression.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can perform postural activities occasionally and can do nonpublic, simple, repetitive tasks.
>
> 5. The claimant is unable to perform any past relevant work.
>
> 6. The claimant was born on April 17, 1960 and was 49 years old, which is defined as a younger individual, age 18-49, on the date the application was filed. He is currently an individual closely approaching advanced age.
>
> 7. The claimant has at least a high school education and is able to communicate in English.
>
> 8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since January 27, 2010, the date the application was filed.

AR 22-30.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied review on September 1, 2012, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5.

## FACTUAL BACKGROUND

Born on April 17, 1960, plaintiff was 49 years old on the alleged onset date of disability and 51 years old at the time of the administrative hearing. Plaintiff is a high school graduate who

2

last worked in short-term positions as a lawn mower, wheelchair upholsterer, door glazer, truck loader, and cashier.  AR 40-43.  Plaintiff alleges disability beginning on July 21, 2009 due to depression.  AR 48.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir.2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec' y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir.1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [she] did

not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## ANALYSIS

Plaintiff seeks summary judgment on the grounds that the ALJ failed to properly weigh the medical opinion evidence and improperly rejected the lay witness evidence. The Commissioner, in turn, argues that the ALJ's decision is supported by substantial evidence and is free from legal error.

A.   Opinion of Treating Psychiatrist

    1.   Dr. Jack E. Downhill

On June 8, 2011, Dr. Jack E. Downhill, plaintiff's treating psychiatrist, completed a Medical Assessment of Ability to Do Work-Related Activities, Mental. AR 466-68. Dr. Downhill noted that plaintiff "has recurrent depression and typically will start a job then become depressed and stop[] going to the job after a few months." He indicated that plaintiff's depression is characterized by decreased energy, poor hygiene and excessive sleep. While Dr. Downhill noted that plaintiff has a good ability to follow work rules, interact with supervisors and function independently, he indicated that plaintiff has only a fair ability to deal with the public, use judgment and maintain attention / concentration. He also indicated that plaintiff has poor or no ability to relate to co-workers and to deal with work stresses.

Dr. Downhill noted that plaintiff has poor to no ability to understand, remember and carry out detailed, complex job instructions; has fair ability to understand, remember, and carry out detailed but not complex job instructions; and has good ability to understand, remember and carry out simple job instructions. Dr. Downhill also noted that plaintiff has good ability to maintain personal appearance, has fair ability to relate predictably in social situations, and poor or no

ability to behave in an emotionally stable manner. Dr. Downhill wrote that plaintiff demonstrates reliability only for the first 2-3 months of a job, but he has a hard time being on time and then he eventually stops going to work. Per Dr. Downhill, plaintiff finds many people irritating and gets annoyed, which can lead to confrontations.

### 2. Legal Standards

"An examining or treating [psychiatrist's] opinion may be rejected by the ALJ when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes 'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" Thomas, 278 F.3d at 957 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). When the medical opinion of an examining or treating psychologist is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. See Thomas, 278 F.3d at 957; see also Lester v. Chater, 81 F.3d 821, 830-32 (9th Cir. 1995).

"A nonexamining [psychologist] is one who neither examines nor treats the claimant." Lester, 81 F.3d at 830. "The opinion of a nonexamining [psychologist] cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an [examining or treating psychologist]." Id. at 831.

When a nonexamining psychologist's opinion contradicts an examining psychologist's opinion and the ALJ gives greater weight to the nonexamining psychologist's opinion, the ALJ must articulate her reasons for doing so. See Morgan, 169 F.3d at 600-01 ("Opinions of a nonexamining [psychologist] may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

### 3. Analysis

The ALJ gave little weight to Dr. Downhill's opinion as inconsistent with his own treatment records. Specifically, the ALJ noted that, notwithstanding the limitations set forth in the Medical Assessment form, Dr. Downhill's treatment notes reflect that plaintiff's depressive disorder was "improved" and that plaintiff was euthymic on Prozac. See AR 28, 444.

The court finds that this constituted a specific and legitimate reason based on substantial evidence in the record for giving little weight to Dr. Downhill's opinion. See, e.g., Valentine v.

5

Comm'r of Social Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that contradiction between a treating physician's opinion and his treatment notes constitutes a specific and legitimate reason for rejecting the treating physician's opinion); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that contradiction between treating physician's assessment and clinical notes justifies rejection of assessment); Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that treating physician's opinion that was "unsupported by rationale or treatment notes, and offered no objective medical findings" to support diagnoses was properly rejected); Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) (holding that contradiction between doctor's treatment notes and finding of disability was valid reason to reject treating physician's opinion).

In giving little weight to Dr. Downhill's opinion, the ALJ also considered the opinion of Dr. Timothy Canty, consultative psychiatrist who examined plaintiff on March 23, 2010. AR 372-75. Dr. Canty noted that plaintiff handles his own chores and money, keeps mostly to himself, and spends most of his time watching television. Dr. Canty also noted that plaintiff was fired from his last job because he was accused of harassment by a female co-worker. Following examination, Dr. Canty issued the following functional assessment:

> [Plaintiff] is cognitively able to manage money and maintains that he is clean and sober. From a psychiatric standpoint I don't think he would have significant difficulty with coworkers and supervisors. He remarked that he learned his lesson at his last job and knows not to "fraternize" with female coworkers. I don't think his chronic mood symptoms would prevent him from attending work.

AR 375. The ALJ gave significant weight to this opinion.

Additionally, the ALJ gave great weight to the concurring opinions from State agency reviewing psychologists. AR 27. These include an April 16, 2010 Mental Residual Functional Capacity Assessment, in which the consultant noted only moderate limitations in plaintiff's ability to work in coordination with or proximity to others without distracting them, ability to complete a normal workday and workweek without interruptions from psychologically-based

symptoms, and ability to interact appropriately with the public. In all other respects, plaintiff's abilities were deemed unimpaired. AR 381-83. See also AR 60-71.

Plaintiff counters that Dr. Downhill's finding that plaintiff's depression was "improved" on Prozac did not negate his conclusion that plaintiff suffered from a significant depressive disorder with significant work-related limitations. In support, plaintiff refers to Dr. Downhill's March 9, 2011 treatment note, in which Dr. Downhill noted that plaintiff's condition on Prozac was improved, but where plaintiff also indicated that he felt he was in a "fog." AR 443. The medical notes reveal that Prozac indeed improved plaintiff's depression. On March 11, 2010, plaintiff first complained of being "in a fog" when taking bupropion, an anti-depressant that Dr. Downhill discontinued and instead started plaintiff on Prozac. AR 419. Over one month later, on April 23, 2010, plaintiff stated that Prozac helped with his mood and kept it up, and he also stated that he had good concentration and energy on the medication. AR 417. Then, on March 9, 2011, in the treatment note that plaintiff references to argue that he was in a "fog," plaintiff also stated that he felt the medications have helped him with his symptoms, and Dr. Downhill continued plaintiff on his then-current dose of Prozac. In any event, even if plaintiff continued to experience work-related limitations despite improvement on Prozac, the court must uphold the ALJ's interpretation of the evidence. Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan, 169 F.3d at 601.

Plaintiff next argues that the consulting psychiatrist's assessment was in fact consistent with Dr. Downhill's assessment in that both indicated that plaintiff would be moderately impaired in his ability to complete a normal workday and workweek without interruption. See AR 382. But contrary to Dr. Downhill's opinion, the consulting psychiatrist in fact noted on the following page of her report that plaintiff has the cognitive and emotional skills to perform simple to semi-skilled tasks in a competitive 40-hour work week environment with limited public contact on a sustained basis, see AR 383, an assessment that the ALJ incorporated in the residual functional capacity.

7

Lastly, plaintiff argues that Dr. Downhill's opinion was consistent with the record as a whole. It is true, as the record reveals, that the evidence before the ALJ was susceptible to more than one rational interpretation, but the ALJ resolved the conflicts and this court must accept the ALJ's interpretation. Bayliss, 427 F.3d at 1217 n.3 ("If the record would support more than one rational interpretation, we defer to the ALJ's decision."); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) ("ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). The court therefore finds that reversal is not warranted based on the ALJ's alleged failure to properly consider Dr. Downhill's opinion.

B.  Lay Witness Testimony

　　1.  Opinion of Terri Lynn Vanek

On February 15, 2010, plaintiff's friend, Terri Lynn Vanek, completed a Function Report – Adult – Third Party. AR 220-27. Ms. Vanek wrote that she has known plaintiff since 2002, and that she sees him daily to watch TV and to go to meetings.[1] She noted that plaintiff's illness affects his ability to work, isolates him, causes loss of concentration, and causes him to sleep too much. She noted no problems with personal care, ability to do household chores or ability to handle his finances. Ms. Vanek indicated that plaintiff prepares his frozen dinners for himself daily, though he does prepare simple meals when he's up to it. She further noted that plaintiff sometimes goes outside, but is isolated mostly. She also indicated that plaintiff is less active than he used to be due to lack of interest, that he attends doctor appointments and meetings on a regular basis, but that he does not interact with family, friends, neighbors or others.

Regarding plaintiff's abilities, Ms. Vanek noted that plaintiff's depressed mood affects his understanding, memory, ability to complete tasks, concentration, and his ability to get along with others. She wrote that plaintiff can only for attention for very short periods of time, that he cannot finish what he starts, and that he cannot follow written instructions well due to lack of concentration. Lastly, she indicated that plaintiff avoids confrontation with authority figures and doesn't like changes in routine or being around lots of people, but wrote that plaintiff seems to

---

[1] Based on multiple references in the medical records to plaintiff's substance abuse treatment history, the reference is most likely to substance abuse recovery support meetings.

handle stress okay.

### 2. Analysis

The ALJ gave little weight to Ms. Vanek's opinion because it was inconsistent with the overall medical evidence discussed in his decision. See AR 29. Plaintiff contends this was in error because Ms. Vanek's opinion was consistent with Dr. Downhill's opinion, the opinion of the consulting State agency psychiatrist, and with plaintiff's own testimony.

Lay testimony regarding a claimant's symptoms is competent evidence which the Commissioner must take into account. Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e) (evidence from non-medical sources such as family members, friends, and neighbors, may be used to show the severity of an impairment and how it affects the claimant's ability to work). The ALJ is required to give specific reasons, germane to the lay witness, to properly discount lay testimony. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) ("If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons that are germane to each witness [and] the reasons germane to each witness must be specific") (internal quotation omitted); Regennitter v. Commissioner, 166 F.3d 1294, 1298 (9th Cir. 1999) (ALJ can reject lay testimony "only by giving specific reasons germane to each witness").

Here, the ALJ rejected Ms. Vanek's statement as inconsistent with the medical evidence that he had previously discussed. The Ninth Circuit has held that an ALJ may discount lay testimony if it conflicts with the medical evidence in the record. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Bayliss, 427 F.3d at 1218; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984); but see Bruce, 557 F.3d at 1115 (improper for ALJ to discredit testimony of claimant's wife as not supported by medical evidence in record).

But assuming the ALJ erred, such error is harmless when "the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay-witness's] claims." Molina v. Astrue, 674 F.3d 1104, 1121-22 (9th Cir. 2012) (quoting Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011)). See also Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons

for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."); Bryant v. Astrue, No. 2:11-cv-1115 EFB, 2012 WL 4468403, at *7 (E.D. Cal. Sept. 25, 2012) ("Given that the ALJ gave legally sufficient reasons for rejecting plaintiff's testimony regarding his subjective complaints and that his daughter and son-in-law's statements merely substantiate his complaints, it follows that the ALJ provided a germane reason for discrediting these lay-witness statements.").

In this case, Ms. Vanek's statement regarding plaintiff's functional limitations was identical to plaintiff's statement, including that he had difficulty interacting with others, that he slept too much, that he was unmotivated, and that he had difficulty concentrating. In assessing plaintiff's statements, the ALJ discredited plaintiff's subjective complaints as not entirely credible.[2] For example, the ALJ relied on treatment records that revealed that plaintiff's depression is "well-controlled" to find that he is not as functionally limited as alleged. An ALJ is free to consider the medical record in testing a claimant's credibility. Morgan, 169 F.3d at 600; SSR 97–6p (consistency of claimant's testimony "both internally and with other information in the case record" is significant indication of a claimant's credibility). He noted, for example, that the medical evidence indicates that plaintiff has only mild results on mental status exams and that medication has effectively treated his symptoms. See AR 28. In a psychological evaluation, plaintiff presented with clear, logical and goal-directed thought content and clear speech, and he behaved in a cooperative manner. Additional treatment records revealed that plaintiff's depression is "well-controlled."

The ALJ also referred to plaintiff's criminal record of forging checks as undermining his credibility. The ALJ's decision to consider plaintiff's prior criminal history in his credibility determination is a reasonable interpretation of the evidence, and therefore this court may not substitute another interpretation in its place. Furthermore, the ALJ's reliance on plaintiff's criminal history is an ordinary technique of credibility evaluation. See Hardisty v. Astrue, 592

---

[2] Plaintiff does not challenge this credibility determination.

F.3d 1072, 1080 (9th Cir. 2010) (in a ruling on an Equal Access to Justice Act request, the court held the ALJ's credibility finding was substantially justified when it was based, among other factors, on claimant's prior criminal convictions).

Next, as to plaintiff's work history, the ALJ noted that the record raised doubts as to whether plaintiff was indeed unable to continue employment due to his medical impairments. For example, while plaintiff indicated that he was fired for being late to work or not appearing at all, he also told the examining psychiatrist that he was fired from one job due to claims of harassment by a female co-worker. The ALJ may rely on the claimant's inconsistent statements on various matters in assessing credibility. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Thomas, 278 F.3d at 958-59.

Lastly, the ALJ relied on plaintiff's inconsistent information regarding his daily activities in discounting his credibility. Daily activities that are inconsistent with alleged symptoms are relevant in assessing credibility. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). At the hearing, plaintiff testified that he slept eighteen hours per day. However, in his Adult Function Report, he stated that he watches television for eight hours a day, and the most recent mental evaluation notes reveals that plaintiff's sleep has been "good" and that he was generally "stable."

As noted, Ms. Vanek's statement about plaintiff's limitations is virtually identical to plaintiff's statement and his testimony, which the court concludes that the ALJ properly discredited. Therefore, the court concludes that any error caused by the ALJ's failure to properly address Ms. Vanek's statement is harmless.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied; and
2. The Commissioner's cross-motion for summary judgment is granted.

DATED: February 7, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11